HOPKINS, J.T.C.
The subject cases were consolidated because they involved identical challenges to the 1989 Director’s equalization table. That table is used in the apportionment of state school aid for the year 1990-1991, in accordance with N.J.S.A. 18A:7A-17 et seq. The appeals challenged the allegedly erroneous inclusion of an added assessment in the amount of $139,600,000 for railroad property located within the Kearny taxing district and known and designated as Block 284, Lot 21AE. That added assessment was canceled by the Hudson County Board of Taxation pursuant to its judgment dated December 27, 1988.
Director has moved to dismiss the complaints since they were filed approximately four months beyond the statutory filing period provided by N.J.S.A. 54:51A-4(c). In opposing the Director’s motion, plaintiffs argue that the Kearny mayor did not receive a certified copy of the table in accordance with N.J.S.A. 54:1-35.1; that the Director is estopped from raising the defense of untimely filing since communications between the treasurer of Kearny and the county tax administrator should be read to imply that the reduced assessment would be reflected in *235 the Director’s table of equalized valuations; that general powers of equity should permit this court to entertain the complaint because of the magnitude of the alleged error and, further, that the provisions of N.J.S.A. 54:51A-4(c) permits this court, on its own motion, to entertain jurisdiction at this time for the purpose of granting relief where the error alleged is of the magnitude here involved.
N.J.S.A. 54:1-35.1 requires that the Director, Division of Taxation, promulgate a table of equalized valuations to be used in the calculation and apportionment of distributions pursuant to the State School Aid Act. Such provision reads as follows:
On or before October 1 in each year the Director of the Division of Taxation, in the State Department of the Treasury shall promulgate a table of equalized valuations to be used in the calculation and apportionment of distributions pursuant to the State School Aid Act of 1954. Such table shall be deemed to have been promulgated on the day when the director shall have completed the delivery of a certified copy thereof to the Commissioner of Education and the mailing of a certified copy thereof to the municipal clerk of each municipality, to the secretary of each county board of taxation and, by certified mail, to the mayor or other chief executive officer of any municipality for which the equalized valuation so certified exceeds by 10% or more the equalized valuation determined for the preceding year. The table for each year and any revision thereof shall be kept as a public record in each office to which it is sent and in the office of the Director of Taxation.
Judicial review of the table is in accordance with N.J.S.A. 54:51A-4(c), which reads as follows:
The State equalization table promulgated pursuant to section 1 of P.L.1954, c.86 (0.54:1-35.1) may be reviewed by the tax court on complaint of any taxing district made within 45 days after its promulgation, or on its own motion, but such review shall not suspend the apportionment of school aid moneys. No change shall be made in the table except after hearing, of which five days’ notice shall be given by mail to the governing body of the taxing district. If, after the hearing, the tax court shall determine that the equalized valuation of any district or districts as fixed by the directors was erroneous, it shall revise and correct the equalization table. Such hearings, review and revisions shall be completed by January 30 next following the promulgation of the table. A certified copy of the revised and corrected table shall be transmitted to each official or board to whom the original table was required to be transmitted and also to the Director of the Division of Taxation. In any such proceeding, the director shall be entitled to be heard, and the assessment ratios as promulgated shall be presumed to be correct, and shall not be revised or modified by the tax court unless the complainant district shall present proof that upon all the evidence available such ratio or ratios could not reasonably be justified. [Emphasis supplied]
*236 Where the equalized valuation attributable to a taxing district exceeds the previous year’s equalized valuation by 10%, the Director is required, as a condition of its being promulgated, to mail or deliver a certified copy to the Commissioner of Education and “to the municipal clerk of each municipality, to the secretary of each county board of taxation and, by certified mail, to the mayor or chief executive officer of any municipality for which the equalized valuation so certified exceeds by 10% or more the equalized valuation determined for the preceding year.” N.J.S.A. 54:1-35.1.
In the subject case, the objective evidence shows that the clerk of Kearny received a copy of the promulgated table and that a certified copy was mailed to the Mayor of Kearny by certified mail, with the return receipt acknowledging delivery returned to the Director. Nothing has been introduced to the effect that such receipt was not acknowledged by the Mayor or an authorized agent for such acceptance. Any argument that N.J.S.A. 54:1-35.1 requires personal delivery to the mayor is without merit.
Plaintiffs’ argument that the Director is estopped from alleging a timely failure to file by virtue of the correspondence between the Kearny treasurer and the county tax administrator must fail since there has been no showing that the requisites for such claim have been met. It is well recognized that estoppel is properly invoked only where the party raising the claim reasonably relied to his detriment on the objective manifestations of his adversary, or an agent authorized to act on behalf of his adversary. L.S. Village, Inc. v. Lawrence Tp., 8 N.J.Tax 287, 296-297 (Tax Ct.1985). There has been no showing that the county tax administrator was the Director’s agent or had any authority to determine or recommend exclusion of the disputed assessment in the preparation of the table.
The request to have this court exercise its general equity powers to supersede Kearny’s statutory appeal period need not be addressed, since as shown, infra, the Tax Court’s discretion *237 ary powers are encompassed in plaintiffs’ last argument, in that the statute provides for such limited relief.
In the preparation of the table, it has been the practice of the Director not to take into consideration adjustments made by the various county boards with respect to added or omitted assessments. See Cherry Hill Tp. v. Director, Taxation Division, 119 N.J.Super. 256, 291 A.2d 28 (App.Div.1972). Such procedure was upheld based upon the breadth of the discretion reposed in the Director in formulating details of methodology in computing the table. The standard to be used in evaluating the Director’s methodology is whether the ratios “could not reasonably be justified.” Id. at 259, 291 A.2d 28.
As noted, N.J.S.A. 54:51A-4(c) provides that the table may be reviewed by the Tax Court on complaint of any taxing district “within 45 days after its promulgation, or on its own motion ----” On such basis, plaintiffs claim that this court has jurisdiction to now hear the present matter, because the circumstances are such that it would be reasonable to exercise such authority.
In reviewing the statute, it is first recognized that this court does not monitor the promulgation of the table. Accordingly, the provision that the court can, on its own motion, entertain jurisdiction, must, of necessity, permit a review only after some allegation of error is brought to its attention. Since an allegation of error brought to its attention by a taxing district’s timely complaint, filed within the 45-day statutory period, would make the authorized review on the Tax Court’s own motion surplusage, it must be construed to mean something more than to hear a timely filed complaint. It is a well-recognized principle of statutory construction that an interpretation which makes any part of a statute ineffective, superfluous, inoperative or meaningless, must be avoided. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 68, 389 A.2d 465 (1978); Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969). Application of that principle requires a determination that it was intended that this court, in its discretion, *238 could review an allegation of error when it came to its attention after the normal appeal period. Otherwise, the provision would be redundant. Rather than treat such Tax Court authority as redundant and inoperative, it must be concluded that it authorizes an exception to the 45-day appeal period, in the discretion of the court, upon a showing that the error is of a substantial nature.
Recognizing the need for expeditious review of allegations of error, as evidenced by the statutory provision requiring completion by January 30 next following the promulgation of the table, it is also recognized that such provision is directory, rather than mandatory, and that the extension of that deadline may be appropriate in the interests of justice, once a tribunal’s jurisdiction has been properly invoked. This is particularly true, since the apportionment of school aid is not suspended during such proceeding. Howell Tp. v. Division of Tax Appeals, 99 N.J.Super. 11, 14-18, 238 A.2d 476 (App.Div.1968), certif. den. 51 N.J. 394, 241 A.2d 12 (1968).
Having determined that this court has the option to review an allegation of error on its own motion at a time subsequent to the 45-day taxing district appeal period, it remains to be determined what circumstances can justify such review.
Such review is only appropriate after consideration is given to the effect of a delayed equalization table, as well as the relative impact on Kearny’s State school aid.
In addition to its use in computing State school aid, the equalization table is used for a variety of other statutory and non-statutory purposes, as shown on the following schedules.
I. USES OF DIRECTOR’S TABLE OF EQUALIZED VALUATIONS REQUIRED BY STATUTE.
1. A measurement for the upper limit of municipal bonded indebtedness (see N.J.S.A. 40:A2-1, et seg.).
2. A measurement for the upper limit of school district bonded indebtedness (see N.J.S.A. 18A:24-19, et seg.).
*239 3. A measurement for the upper limit of county bonded indebtedness (see N.J.S.A. 40A:2-1, et seg.).
4. Calculation of the taxable value of locally assessed personal property used in business (see N.J.S.A. 54:4-2.47, et seg.).
5. Component of the formula for calculation of apportionment of the Municipal Purposes Tax Assistance Fund (see N.J.S.A. 54:1-46, et seg.).
6. Component of the formula for calculation of individual Homestead Tax Rebate amounts (see N.J.S.A. 54:4-3.81 and -3.91).
7. Component of the formula for calculating amounts due municipalities in lieu of taxes for certain State-owned properties situated within their borders (see N.J.S.A. 54:4-2.2e).
8. Calculation of State replacement revenues for Class II railroad property (see N.J.S.A. 54:29A-24.1, et seg.).
9. Development of the Common Level for discrimination tax appeals at the County Board of Taxation, Tax Court and Superior Court levels (see N.J.S.A. 54:l-35a and -35b, N.J.S.A. 54:3-22 and N.J.S.A. 54-.51A-6).
10. Component of the formula for the distribution of State library aid (see N.J.S.A. 40:54-8).
11. Component of the New Jersey Urban Aid to Municipalities calculation (see N.J.S.A. 52:27D-178, et seg.).
II. NON-STATUTORY USES OF DIRECTOR’S TABLE OF EQUALIZED VALUATIONS.
1. As one of the criteria for determining the need for revaluation.
2. As a basis for calculation of coefficients of deviation, which is also a criterion for determining the need for revaluation.
3. As a basis for calculation of effective general tax rates which are published each year in the Annual Report of the Division of Taxation and serve as a basis for comparison of property taxes from municipality to municipality.
4. As a basis for analyzing equity of assessed values on a sector by sector or neighborhood by neighborhood basis within a taxing district.
5. As a basis for apportionment of county operating budgets in 18 of 21 counties.
6. As a basis for apportionment of county library budgets.
7. As a basis for apportionment of regional school district budgets.
8. As a basis for apportionment of local health services budgets.
The need to have a timely table is balanced against the claimed loss in school aid which would be experienced by Kearny, absent a revision of the table. When questioned as to the amount involved, plaintiffs informed the court that the loss in state school aid revenue approximated $584,622. However, subsequent recalculations revealed that the loss in direct school aid would amount to $39,272, plus a proportionate part of the *240 school aid allocable to the Hudson County Vocational School. In total, the amount of school aid loss, either directly or indirectly, is approximately $41,000. In addition to ascertaining the amount of school aid involved, there must also be considered the impact of that amount on the local property tax revenue which Kearny receives. According to the Annual Report of the Director of Taxation for Fiscal Year 1989, Kearny had a property tax base of approximately $1,114,000,000, and property tax revenues of approximately $35,150,000 for 1989. Id. at 308-309. The tax base, as well as the potential revenue to be realized through local property taxation, should be considered in weighing the relative financial impact of the claimed $41,000 school aid loss.
Considering Kearny’s delay of four months beyond the expiration of its appeal time limit in bringing this matter to the court’s attention; the adverse effect on other agencies in their governmental activities which would result from a delayed revision of the table; the questionable probability of Kearny successfully arguing that the Director’s formula, which did not utilize the disallowed added assessments, resulted in a table that “could not be reasonably justified,” and lastly, the ability of the taxing district of Kearny to absorb the alleged loss of $46,000 in State school aid, all require a finding that it would be inappropriate for the court to exercise its discretion in entertaining Kearny’s complaint at this late date.
Defendant’s motion to dismiss the complaints as untimely is granted.